FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 1 6 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Benjamin Carmel
Benjamincarmel@aol.com
3174 Hamblin Way,
Wellington, Florida 33414
Tel. (561)-629-2541

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Carmel<br>Pro se,<br><br>Plaintiff<br><br>vs.<br><br>IMMIHELP, LLC, a Texas LLC<br><br>Defendant | Case No. **CV 12-00558-PHX-DGC**<br><br>COMPLAINT |

Plaintiff Benjamin Carmel, alleges against IMMIHELP LLC ("Defendant"), as follows:

## NATURE OF THE CASE

This is an action for reverse domain name hijacking under 15 U.S.C. § 1114(D)(v), seeking injunctive and declaratory relief.

## Introductory Statement:

Plaintiff, Benjamin Carmel has developed, owned, and operated three U.S. immigration domains over the past 7 months: <visalottery.com> (registered by the Plaintiff's father since July 07, 1997), <evisahelp.com>, and <immigrationhelpcentral.com>. In developing his latest venture, striving to launch a new website to provide a free forum for potential immigrants as well as answers to frequently asked immigration questions, Plaintiff registered an internet domain name incorporating the descriptive words "immigration help center" a/k/a "immi help center."

1

2  Now, a business entity from another state, has decided that it covets the <immihelpcenter.com>
3  domain name. Undeterred by the fact that it has no legitimate claim to the domain name,
4  Defendant has attempted to invent one –falsely asserting to a domain name dispute arbitration
5  panel that Plaintiff has acted with some nefarious purpose. Unfortunately, under the relaxed
6  evidentiary standards for those proceedings, Defendant succeeded in falsely painting the Plaintiff
7  as a cybersquatter, and in falsely asserting superior rights to the domain name, without a shred of
8  any kind of proof to support its claims.
9
10 If left to stand, Defendant's actions, which constitute reverse domain name hijacking,
11 threaten to rob Plaintiff of his domain name. Fortunately, Congress has foreseen the potential for
12 this type of injustice and provided a statutory mechanism whereby this Court can stay the
13 hijacking of <immihelpcenter.com>. Plaintiff hereby invokes that mechanism and brings this
14 complaint seeking to retain ownership of his rightfully obtained online property.
15

16 **<u>Jurisdiction and Venue</u>**

17

18      1. This Court has subject matter jurisdiction over this action because: (i) it involves
19 a federal question; (ii) it involves a federally registered trademark; and (iii) it requires a
20 declaration of rights and other legal relations. *See* 28 U.S.C. §§ 1331 ("The district courts shall
21 have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of
22 the United States."); 1338(a) ("The district courts shall have original jurisdiction of any civil
23 action arising under any Act of Congress relating to . . . trademarks."); and 2201(a) ("In a case of

actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

2. Venue is proper in this Judicial District because the property that is the subject of the action, the <immihelpcenter.com> domain name, is located here. *See* 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in . . . (2) a judicial district in which . . . a substantial part of property that is the subject of the action is situated . . . ."). In addition, the relevant sponsoring registrar, GoDaddy.com, Inc.("GoDaddy"), is located within this Judicial District.

3. Pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") Paragraph 3(b)(xiii), the Complainant, Immihelp LLC (in the UDRP case, now Defendant in the present case) is required to explicitly consent to a "mutual jurisdiction," in which challenges to a decision under the UDRP may be brought by the Respondent (in this case, now Plaintiff Benjamin). Defendant expressly consented to jurisdiction in this District for actions such as this one. (Doc. No. 1-2, § 11.)

**The Parties:**

4. Plaintiff Benjamin Carmel is an individual domiciled in the State of Florida, and the owner of the <immihelpcenter.com> domain.

5. Defendant is a Texas LLC, which provides India and U.S. immigration information.

**ALLEGATIONS COMMON TO ALL CLAIMS**

Benjamin Carmel is an individual who has for many months developed U.S. immigration informational websites. In the past several months, Benjamin has spent hundreds of hours developing his domains.

6. The domain <immihelpcenter> is descriptive and suggestive of an "immigration help center," wherein the shorthand word immi stands for immigration.

7. The term "immi" has been used in many domain names including but not limited to <immi.gov.au> (The Australian government's Department of Immigration and Citizenship), <immi-moj.go.jp> (Immigration Bureau of Japan), <immi.gov.np> (the government of Nepal's Department of Immigration), <immi.gov.bd> (The Immigration service, Bangladesh Police), <immilaw.com/> (created on 20-SEP-1996, 3 years before the creation of <immihelp.com> on 14-DEC-1999), and <immi-law.com>.  Therefore, the shorthand word "immi" for immigration and the words "help center" are extremely common, and the mere use of such descriptive words in a domain name should not raise any issues of confusion with the Defendant's trademark. Thus the registration of <immihelpcenter.com> was not intended to incorporate the defendant's trademark, but rather to serve as a description of an immigration-related website (an immi "help center" a/k/a immigration "help center").

8. The domain name <immihelpcenter.com> was registered by the plaintiff after attempting to register the domain <immigrationhelpcenter.com>, however

1  &lt;immigrationhelpcenter.com&gt; was already taken as of January 3rd 2010. Although
2  &lt;immigrationhelpcenter.com&gt; was at that time available under godaddy.com's auctions for
3  $350.00, it was simply not within the plaintiff's budget as a college student. The domain
4  &lt;immihelpcenter.com&gt; is simply a description of the plaintiff's planned website, as an
5  "immigration help center." Moreover, since immigration help center was taken, the Plantiff also
6  registered &lt;immigrationhelpcentral.com&gt; See exhibit A for WHOIS printouts of
7  &lt;immihelpcenter.com&gt;, &lt;immigrationhelpcentral.com&gt;, and &lt;visalottery.com&gt;.
8
9        9. On November 9th, 2011, the Plantiff received an email from Klemchuck Kubasta LLP,
10 in which attorney Remy Davis incorrectly claimed that the plaintiff had registered the domain
11 &lt;immihelpcenter.com&gt; with a bad faith intent to profit from the goodwill of the IMMIHELP
12 mark. A true and correct copy of that letter has been submitted herewith as Exhibit B.
13       10. Two days prior to receiving an email from Remy Davis of Klemchuk Kubasta LLP,
14 on November 7 2011, Remy Davis, the same attorney which would later help prepare the UDRP
15 case for IMMIHELP LLC, filed a service mark for IMMIHELP LLC (see Exhibit C). The
16 Plaintiff believes that this vexatious litigation tactic was used as an attempt to gain favor from
17 the National Arbitration Forum, in a case in which they later intended to submit. A true and
18 correct copy of a UDRP complaint, incorrectly submitted by Megan Haslam of Klemchuk
19 Kubasta LLP on February 21, 2012, has been submitted herewith as Exhibit D, in which Remy
20 Davis is the representative. The revised complaint submitted by the Defendant, however, was
21 signed by Kelly Kubasta of Klemchuk Kubasta LLP.

1    11. On January 17, 2012, the complainant's attorneys submitted a revised UDRP

2 complaint with the National Arbitration Forum, and notification of commencement was received

3 by the Plaintiff on January 18 2012.

4    12. Plaintiff prepared and filed a response to Defendant's amended complaint on[1]

5 February 6, 2012, refuting its allegations of bad faith and accurately setting forth the facts

6 surrounding Benjamin's registration and use of <immihelpcenter.com>, which use has never

7 interfered with Defendant's rights. A true and correct copy of Plaintiffs' response to Defendant's

8 revised complaint, along with its supporting documents, are submitted herewith as Exhibits E

9 and F.

10    13. Although the <immihelpcenter.com> domain name has not yet been

11 transferred away from Plaintiffs, the instant action is ripe for review by this Court,

12 because such transfer is inevitable absent further action by Plaintiff.[1]

13

14    14. Plaintiff asserts that <immihelpcenter.com> should not be transferred to the

15 Defendant.

16

17                    **FIRST CLAIM FOR RELIEF**

18              *(Reverse Domain Name Hijacking – 15 U.S.C. § 1114(2)(D)(v))*

19    15. Plaintiff hereby re-alleges and incorporates by reference the allegations in the

20 preceding paragraphs as if fully set forth herein.

21    16. Through passage of the Anticybersquatting Consumer Protection Act (the

---

[2] *See, e.g., Sallen*, 273 F.3d at 25, n.11 (noting that a complaint under 15 U.S.C. 1114(2)(D)(v) is properly brought where transfer of the disputed domain name is inevitable following an arbitration decision).

1  "ACPA"), Congress amended 15 U.S.C. § 1114 to establish a right of relief against an
2  overreaching trademark owner seeking to take ownership of domain names that have not been
3  registered or used in violation of the trademark owner's rights. This practice is colloquially
4  called "reverse domain name hijacking."
5
6      17. The Internet Corporation for Assigned Names and Numbers ("ICANN"), the
7  organization responsible for promulgating the UDRP, defines reverse domain name hijacking as
8  "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain
9  name."[2]
10     18. Section 1114 states, in pertinent part, that:
11         [a] domain name registrant whose domain name has been suspended,
12         disabled, or transferred under [the UDRP] may, upon notice to the
13         mark owner, file a civil action to establish that the registration or use
14         of the domain name by such registrant is not unlawful under this
15         chapter. The court may grant injunctive relief to the domain name
16         registrant, including the reactivation of the domain name or transfer of
17         the domain name to the domain name registrant.
18  15 U.S.C. § 1114(2)(D)(v).
19
20     19. To prevail on a reverse hijacking claim, Plaintiffs must show that: (i) Benjmain
21  Carmel is the domain name registrant for the <immihelpcenter.com> domain name (the
22  "Hijacked Domain Name"); (ii) the Hijacked Domain Name was suspended, disabled, or
23  transferred under GoDaddy's domain dispute resolution policy; (iii) the UDRP Complainant has

notice of this action by service or otherwise; and (iv) Plaintiffs' registration or use of the Hijacked Domain Name is not unlawful under the ACPA.

20. Plaintiffs can demonstrate each of the four requirements to prevail in this reverse[2] hijacking claim.

### *Plaintiff is the domain name registrant.*

21. Plaintiff Benjamin is the current owner of the Hijacked Domain Name.

22. Plaintiff Benjamin has been the registrant of the Hijacked Domain Name continuously since October 15, 2011. His email address and contact information is listed in the current WHOIS record for the domain name. See Exhibit A.

### *The Hijacked Domain Name was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy.*

23. On April 26, 2011, the UDRP Complainant (i.e., Defendant) submitted a domain name dispute complaint to a qualified arbitrator, in accordance with GoDaddy's domain name dispute resolution policy.

24. Despite the fact that the UDRP Complainant / Defendant failed to show that Plaintiffs had registered or used the Hijacked Domain Name in bad faith, a single-member panel decided that <immihelpcenter.com> should be transferred away from the Plaintiff.

---

UDRP Rule 1, at http://www.icann.org/en/dndr/udrp/uniform-rules.htm

25. The Hijacked Domain Name is subject to imminent transfer as a result of the improper UDRP decision.

### *The UDRP Complainant has notice of this action by service or otherwise.*

26. Contemporaneous with the filing of this Complaint and its Exhibits with the Court, Plaintiff has provided notice of the same by email upon the UDRP Complainant, its attorney, and the sponsoring registrar for the Hijacked Domain Name, GoDaddy.

27. This Complaint, its exhibits, and a properly issued Summons, shall be served upon Defendant in due course.

### *Neither Plaintiff's registration, nor his use of the Hijacked Domain Name is unlawful under the ACPA.*

28. Plaintiffs have neither registered nor used the Hijacked Domain Name in bad faith.

29. Congress has provided a number of guidelines for determining whether a party has registered, used, or trafficked in a domain name with bad faith. *See* 15 U.S.C. § 1125(d)(1)(B)(i). More specifically, "[i]n determining whether [Plaintiffs have] a bad-faith intent [sufficient to justify forfeiture of the domain name in question], a court may consider factors such as, but not limited to:

I. the trademark or other intellectual property rights of [Plaintiffs], if any, in the [Hijacked Domain Name];

II. the extent to which the [Hijacked Domain Name] consists of the legal name of [Plaintiffs] or a name that is otherwise commonly used to identify [Plaintiffs];

III. [Plaintiffs'] prior use, if any, of the [Hijacked Domain Name] in connection with the bona fide offering of any goods or services;

IV. [Plaintiffs'] bona fide noncommercial or fair use of ["immihelpcenter"] in a site accessible under the [Hijacked Domain Name];

V. [Plaintiffs'] intent to divert consumers from the [UDRP Complainant]'s online location to a site accessible under the [Hijacked Domain Name] that could harm the goodwill represented by ["IMMIHELP"], either for commercial gain or with the intent to tarnish or disparage ["IMMIHELP"], by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI. [Plaintiffs'] offer to transfer, sell, or otherwise assign the [Hijacked Domain Name] to the [UDRP Complainant] or any third party for financial gain without having used, or having an intent to use, the [Hijacked Domain Name] in the bona fide offering of any goods or services, or [Plaintiffs'] prior conduct indicating a pattern of such conduct;

VII. [Plaintiffs'] provision of material and misleading false contact information when applying for the registration of the [Hijacked Domain Name], [Plaintiffs'] intentional failure to maintain accurate contact information, or [Plaintiffs'] prior conduct indicating a pattern of such conduct;

VIII. [Plaintiffs'] registration or acquisition of multiple domain names which [Plaintiffs know] are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX. the extent to which [the UDRP Complainant's mark] incorporated in [Plaintiffs'] domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of [this section]."

15 U.S.C. § 1125(d)(1)(B)(i).

30. Addressing these factors, (III.) the Plaintiff's use of the <immihelpcenter> domain name has been passive, but only in preparation of Benjamin's intended future bona fide use; (IV) no use has ever been made, other than preparations of use of the domain, due to the Plaintiff's lack of time during the academic year in college; (V.) the disputed domain name was being redirected to the Plaintiff's other website <eaquariumadvice.com> without the Plaintiff's prior knowledge, due to the domain being on the same Godaddy hosting plan as <eaquariumadvice.com> without a separate FTP file folder; (VI.) Plaintiff has never offered to sell or otherwise assign the <immihelpcenter.com> domain name; Plaintiff has clearly demonstrated their intent to use the <immihelpcenter.com> domain name in connection with a bona fide offering of goods and services; (VII.) Plaintiff can be reached through use of the contact information provided in the WHOIS record for the <immihelpcenter.com> domain name; Plaintiff has never had any intent to hide Benjamin's ownership of the <immihelpcenter.com>

domain name, (VIII.) Plaintiff has registered the <immihelpcenter.com> domain as it is descriptive of an "immigration help center" without any prior knowledge of the IMMIHELP trademark.

31. In short, Plaintiffs neither registered, trafficked in, nor used the Hijacked Domain Name in any way that violates the ACPA.

32. Plaintiffs' registration and use of <immihelpcenter.com> are not unlawful under the ACPA, and therefore the Plaintiffs have every right to possess and maintain this domain name.

### *Plaintiff is the victim of a reverse domain name hijacking*

33. On March 5th, 2012, a single-member arbitration panel erroneously decided that Plaintiffs' registration and use of the <immihelpcenter.com> domain name were in bad faith, and ordered transfer of <immihelpcenter.com> to the UDRP Complainant / Defendant. (See exhibit G).

34. This arbitration decision is due no deference in this Court. (*See Weber-Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.*, 2000 U.S. Dist. LEXIS 6335 at *7, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) ("We conclude that this Court is not bound by the outcome of the ICANN administrative proceedings."); *see also Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Broadbridge Media LLC v. Hypercd.com*, 106 F. Supp. 2d

505, 509 (S.D.N.Y. 2000). Moreover, in deciding Plaintiff's claims, this Court should perform a *de novo* review of the allegations herein presented. (*See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 31-32 (1st Cir. 2001); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 381 (2d Cir. 2003); *Dluhos v. Strasberg*, 321 F.3d 365, 373 (3d Cir. 2003); *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 386 (4th Cir. 2003); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003); *Parsi v. NetLearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Stenzel v. Pifer*, 2006 U.S. Dist. LEXIS 32397 (W.D. Wash. 2006).

35. Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiffs have no legitimate interest in the <immihelpcenter.com> domain name. On the contrary, Plaintiffs' verifiable activities to date not only demonstrate their legitimate interest in the Hijacked Domain Name, but they prove by clear and convincing evidence that Plaintiffs have no intention of using the Hijacked Domain Name for an improper purpose.

36. Despite the Defendant's knowledge that the links on <immihelpcenter.com> (printed by the complainant in the UDRP case as of January 11, 2012) were dead links that did not lead anywhere, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiffs registered the domain name <immihelpcenter.com> with the intent to ransom it for financial gain. Despite the Plaintiff's providing the single panel member evidence (in the form of a google performance report) showing only an insignificant number of views of the website in January 2012, the Panel incorrectly believed that the Plaintiff was using the IMMIHELP trademark for

1   financial gain. Upon recent review of the Plaintiff's google performance report, one internet

2   viewer inadvertently clicked on an ad on <eaquariumadvice.com> for 92 cents, to which

3   <immihelpcenter.com> was being directed, without the Plaintiff's prior knowledge. Moreover,

4   the only reason why <immihelpcenter.com> was added to the Plaintiff's google account is

5   because it was inadvertently displaying eaquariumadvice.com's files, and sites are automatically

6   detected by the Google account (see exhibit H). As stated before, since <immihelpcenter.com>

7   was added to the Plaintiff's Godaddy hosting account without also creating a separate file folder

8   to upload content to, <immihelpcenter.com> was using the root folder of the Plaintiff's hosting

9   account, which contained all of "eaquariumadvice.com's" content. In the UDRP case, defendant

10  provided a printout of the Plaintiff's other fish-related domain <aquariumfishblogs.com>

11  (created because of the Plaintiff's fish keeping hobby), which the defendant believed were pages

12  of <immihelpcenter.com>. At the time in which the defendent's representative printed out a copy

13  of <immihelpcenter.com>, the index.php file of <aquariumfishblogs.com> (another fish keeping

14  website) was found on the Plaintiff's primary root domain <eaquariumadvice.com>. After failing

15  to access a functional <eaquariumadvice.com> website (because of the nonfunctional

16  <aquariumfishblogs.com> index.php page) in the month of January, and before receiving the

17  UDRP complaint, the Plaintiff called Godaddy customer support and was informed that on Linux

18  hosting accounts (with Godaddy), index.php files take priority over index.html files. The

19  Plaintiff soon renamed the index.php file to index1.php, without making any changes to the file,

20  and thus <eaquariumadvice.com> and inadvertently <immihelpcenter.com> can now be viewed

21  online (unless Godaddy has already transferred the disputed domain name). Thus on viewing

22  any <eaquariumadvice.com> and <immihelpcenter.com> page (see exhibit J on the attached

23  UDRP table of exhibits-as Exhibit F in this complaint), it is clear that all content is identical.

1  The great majority of views of <immihelpcenter.com> in the month of January were likely views
2  either by the Plaintiff or Defendant in preparing for the UDRP case.
3      37. In the Defendant's UDRP complaint, the Defendant asserted, without any kind of
4  proof to support its claims, that by registering <immihelpcenter.com>, the Plaintiff was
5  preventing the Defendant from "reflecting this [IMMIHELP] mark in a corresponding domain
6  name important to its business, thereby disrupting the [Defendant's] business." The Defendant
7  failed to provide any evidence of such intent to use the <immihelpcenter.com> domain prior to
8  the Plaintiff's registration of the domain.
9
10      38. This Court is not bound by the decision of the single-member arbitration panel.
11      39. Plaintiff did not register <immihelpcenter.com> in bad faith.
12      40. Plaintiff has never used <immihelpcenter.com> in bad faith.
13      41. Plaintiff has never trafficked in <immihelpcenter.com>, nor in any other domain
14  name.
15      42. The UDRP Complainant / Defendant has overreached its trademark rights and
16  wrongfully asserted a claim to the Hijacked Domain Name.
17      43. The events described herein constitute reverse domain name hijacking and
18  warrant injunctive relief for Plaintiffs under 15 U.S.C. § 1114(2)(D)(v).
19      44. Plaintiffs are entitled to injunctive relief, preventing the UDRP Complainant's
20  reverse hijacking of the <immihelpcenter.com> domain name.
21  //
22  //
23  //

1  //

2  //

3  **PRAYER FOR RELIEF**

4

5  WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

6  (1) That the Court enter a judgment in favor of Plaintiffs and affirming that: (i) Benjamin is the domain name registrant for <immihelpcenter.com>; (ii) <immihelpcenter.com> was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy; (iii) Defendant has notice of this action by service or otherwise; and (iv) Plaintiffs' registration or use of <immihelpcenter.com> is not unlawful under the ACPA.

11  (2) That the Court issue injunctive relief against enforcement of the UDRP decision of March 5, 2012, which decision ordered transfer of the Hijacked Domain Name away from Plaintiffs. Defendants have engaged in reverse domain name hijacking pursuant to 15 U.S.C. 1114(D)(v). Plaintiff has been deprived of his use and ownership of a domain name that he registered and used in good faith, by the actions of the Defendant. Plaintiff seeks to retain ownership, and unrestricted use of his domain name "immihelpcenter.com". Plaintiff satisfies the four elements of the ACPA.

18  (3) Defendant has litigated the URDP case in the National Arbitration Board against the Plaintiff, vexatiously, and in bad faith. Plaintiff seeks reasonable fees and costs associated with the preparation and litigation of the case before this court, pursuant to the Lanham Act, a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The court in Stephen W. Boney, Inc. v. Boney Servs, Inc., 127 F.3rd 821, 827 (9th Cir. 1997), held that vexatious, or bad faith litigation can qualify as exceptional under the Lanham

Act. See also Lahoti v. Vericheck, Inc., 636 F.3d 501, 510-11 (9th Cir. 2011) (affirming award of attorneys' fees; action "exceptional" when party engaged in abusive litigation practice).

Dated this 15th Day of March, 2012.

*Benjamin Carmel* (signature)

Benjamin Carmel

3174 Hamblin Way

Wellington, Florida 33414

benjamincarmel@aol.com

(561)-629-2541